IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BOARD OF COMMISSIONERS OF MONTGOMERY COUNTY, OHIO, on behalf of MONTGOMERY COUNTY, OHIO and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR FOR FEDERAL NATIONAL MORTGAGE ASSOCATION AND FEDERAL HOME LOAN MORTGAGE CORPORATION; FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE, a federally chartered corporation; and FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC, a federally chartered corporation,<br><br>Defendants. | Civil Action No.: 3:12-cv-245<br><br><br><br>CLASS ACTION COMPLAINT |

**CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff, the BOARD OF COMMISSIONERS OF MONTGOMERY COUNTY, OHIO on behalf of MONTGOMERY COUNTY, OHIO and all others similarly situated by and through the undersigned counsel, submits this Complaint (the "Complaint") against FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR FOR FEDERAL NATIONAL MORTGAGE ASSOCATION AND FEDERAL HOME LOAN MORTGAGE CORPORATION; FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE; and FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC, (hereinafter the "Defendants"), based on information and belief after due investigation, except as

1

to those matters which relate to Plaintiff and its own acts, which are asserted on personal knowledge.

## NATURE OF THE ACTION

1. This is a civil class action brought by the Board of Commissioners for Montgomery County, Ohio on behalf of Montgomery County, Ohio and all other similarly situated counties in Ohio (collectively referred to herein as "the Class") against the Defendants for unpaid excise taxes under Ohio Law from 2002 to present (the "Class Period"). Plaintiff seeks to recover the benefits the Defendants received in wrongfully and unjustly claiming they were exempt from paying excise taxes on the privilege of transferring real property in Montgomery County and the various counties of Ohio. The Plaintiff seeks to regain the money rightfully due and owing to it and the Class.

## JURISDICTION AND PARTIES

2. This is a class action to recover real estate transfer taxes on the recording of instruments and other relief under Ohio law.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) as the parties are citizens of different states and the amount in controversy exceeds $75,000. In addition, this Court has jurisdiction under 28 U.S.C. § 1331, as this case requires interpretation of federal law in order to adjudicate Plaintiffs' state law claims.

4. The Plaintiff is the Board of Commissions for Montgomery County, Ohio, on behalf of Montgomery County, Ohio and all other similarly situated counties in Ohio. Ohio Rev. Stat. § 305.12 authorizes the Board of Commissioners of each county to sue and be sued for the collection of "any money or other property due the county."

5. Defendant Federal National Mortgage Association ("Fannie Mae") is a federally chartered, privately held corporation with its principal place of business in Washington D.C.

6. Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") is a federally chartered, privately held corporation with its principal place of business in McLean, Virginia.

7. Defendant Federal Housing Finance Agency ("FHFA") is an agency of the United States with its principle place of business in Washington, D.C.

8. The Defendants have at all times relevant to this litigation conducted business in Montgomery County, Ohio, and throughout the state, and are subject to the jurisdiction of this Court.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial amount of the violations complained of occurred in this District.

## FACTUAL ALLEGATIONS

**A.** **Ohio's Transfer Taxes**

10. At all relevant times, the State of Ohio has had two county transfer taxes, both of which are to be paid by the grantor of a real property deed prior to presentation of the deed for recordation. First, Ohio Rev. Code § 319.54(G)(3) requires the auditor in each Ohio county to collect ten cents ($0.10) for each one hundred dollars ($100), or fraction thereof, of the value of the real property transferred. This first transfer tax is mandatory statewide. Second, Ohio Rev. Code § 322.02 permits each Ohio county, by resolution adopted by the board of county commissions of the county, to enact a "real property transfer tax on each deed conveying real property or any interest in real property located wholly or partially within the boundaries of the county" in order to "pay[] the costs of enforcing and administering the tax and provid[e]

additional general revenue for the county." This second transfer tax is capped, by state law, at thirty cents ($0.30) for each one hundred dollars ($100), or fraction thereof, of the value of the real property transferred.

11.     Ohio Rev. Code § 322.04 permits any county that has enacted the County Excise Tax "by proper suit, action, or proceeding in any court of competent jurisdiction [to] recover the amount of such taxes due the county and not paid to the county at the time" the deed is delivered.

12.     In addition to collection of the back-owed County Excise Tax, a county bringing such a suit is entitled to "a penalty of ten per cent of the amount of such tax" and a fine of "not less than one hundred nor more than one thousand dollars." Ohio Rev. Code §§ 322.04 & 322.99.

13.     Between 2002 and the end of 2008, the number of Ohio counties levying the second transfer tax under Ohio Rev. Code § 322.02, grew from 73 counties to 87 counties (out of 88 total counties in Ohio). The amounts for this second transfer tax range between one dollar and three dollars for every one thousand dollars of value, or fraction thereof.

14.     Montgomery County's County Excise Tax has ranged from two dollars (April 1, 1981 through August 5, 2007) to three dollars (August 6, 2007 through present) for every one thousand dollars of value, or fraction thereof.

15.     According to the Ohio Department of Taxation, between 2002 and 2010, the County Excise Tax generated roughly $1,059,200,000 for Ohio Counties. The average County Excise Tax on each transfer of real property during this period was $409.41. The percent of transactions granted exemptions, either legally or illegally, from the County Excise Tax grew from 41.5% in 2005 to a high of 46.6% in 2009. This growth in claimed exemptions corresponded with a decrease in revenues generated from the County Excise Tax, from a high of

roughly $ 152,700,000 in 2006 to a low of $77,700,000 in 2009. As explained herein, Fannie Mae and Freddie Mac's wrongful claims of exemption in Ohio led to at least some of the decline in County Excise Tax revenue during this period.

**B.     The Defendants Have Served as Grantor or Grantee in Numerous Property Transfers in Ohio Counties and Have Failed to Pay the Properly Owed County Excise Tax.**

16.     Congress chartered Fannie Mae and Freddie Mac to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and "to promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Although Fannie Mae and Freddie Mac were initially federal entities, they are now private, publicly traded corporations.

17.     The FHFA was created in 2008 to oversee and regulate Fannie Mae and Freddie Mac. *See* 12 U.S.C. § 4501, *et seq.*. On September 6, 2008, the FHFA "succeed[ed] to . . . all rights, titles, powers, and privileges" of Fannie. 12 U.S.C. §§ 4617(b)(2).

18.     When a mortgagor becomes delinquent and enters into foreclosure, Fannie Mae or Freddie Mac becomes become the owner of the property secured by the mortgage in one of two ways. First, Fannie Mae and Freddie Mac act as guarantor on about forty percent of all single-family mortgages in the United States; when a Fannie Mae or Freddie Mac guaranteed mortgage is foreclosed on by a the mortgagor, Fannie Mae or Freddie Mac purchase the property from the mortgagor. This transfer is recorded in the appropriate county land office. Second, Fannie Mae and Freddie Mac also own about thirty-five percent of single-family mortgages nationwide, and become owner of the property through the foreclosure process.  Regardless of how Fannie Mae and Freddie Mac become owners, Fannie Mae or Freddie Mac subsequently attempt to locate a new buyer for the property. Upon finding a buyer, Fannie Mae or Freddie Mac, whichever took

ownership, conveys the property and records the deed in the appropriate county land office. The chart below, from Defendant FHFA, shows the percentage of all single-family mortgages in the United States owned or guaranteed by Fannie Mae and Freddie Mac.



Source: Federal Housing Finance Agency

19. The foreclosure crisis has led to Fannie Mae and Freddie Mac succeeding in ownership to a significant number of deeds in Ohio and across the country.

20. As to the above described transactions, Fannie Mae and Freddie Mac are legally required to pay Ohio's County Excise Tax to the county where the property is located when it records (a) transfers *to* Fannie Mae or Freddie Mac from the mortgagor by virtue of being a guarantor of the mortgage,[1] and/or (b) transfers *from* Fannie Mae or Freddie Mac to subsequent purchasers of the property.

21. However, despite receiving more than $183 billion in federal bail-out funds, Fannie Mae and Freddie Mac systematically failed to pay the appropriate County Excise Tax for transfers *from* Fannie Mae/Freddie Mac and have failed, on at least some occasions, to pay the appropriate County Excise Tax for transfers *to* Fannie Mae/Freddie throughout the relevant

---

[1] This first category of transfers also includes situations where Fannie Mae/Freddie Mac, as guarantor, receives the deed directly from the debtor without the interim transfer from the debtor to the mortgagor.

period. Fannie Mae and Freddie Mac accomplished this by wrongfully claiming they are exempt from the tax under Ohio and/or federal law.

22. Fannie Mae and Freddie Mac have claimed a number of exemptions, none of which apply. First, Fannie Mae and Freddie Mac have claimed that they are federal instrumentalities exempt from the County Excise Tax. Second, Fannie Mae and Freddie Mac have claimed that they are exempt, as to transfers *to* them from the mortgagor, because this transfer is made in order to release a security for a debt obligation or because no money or other valuable consideration was paid. Finally, Fannie Mae and Freddie Mac have sometimes claimed that they are exempt because their federal charters provide they are exempt from "all taxation." None of these exemptions apply.

23. The Ohio Department of Taxation has already determined that the first two categories of exemptions do not apply. As to the first claimed exemption, in a December 22, 2008 memorandum (attached hereto as Exhibit A), the Department of Taxation engaged in an exhaustive legal analysis and concluded: "Fannie Mae and Freddie Mac are **not** federal instrumentalities for purposes of the real property conveyance fee exemption in R.C. § 319.54(g)(3)(a)." (emphasis in original). As to the second claimed exemption, in a May 24, 2012 memorandum (attached hereto as Exhibit B) the Department of Taxation wrote that although a mortgagor "may attempt to 'assign' its interest to Fannie Mae/Freddie Mac or it may provide an affidavit that the transfer is a required condition of the settlement of a foreclosure proceeding" these transfers to Fannie Mae/Freddie Mac are classic step transactions that attempt "to turn a taxable transfer of real property into a potentially exempt transaction (a deed in lieu of foreclosure would be an exempt transaction under Ohio Rev. Code § 319.54(G)(3)(b)/(m) if no consideration readily convertible to money changes hands). However, in the above described

7

transaction, Fannie Mae/Freddie Mac has acted on the guarantee and made the lending institution whole in the transaction. Therefore, the transaction remains taxable. Moreover, the transaction has not been made solely in order to release a security for a debt or obligation; the transaction has been made to transfer title of the property to the guarantor."

24. Although Fannie Mae and Freddie Mac have apparently complied with the first memorandum since approximately January 2009, Fannie Mae and Freddie Mac still wrongfully claim that the second exemption applies. Consequently, the Department of Taxation has warned all county auditors that "[t]ransfers involving Fannie Mae/Freddie Mac should be closely scrutinized to assure that the exemption identified provides a valid reason for the non-payment of conveyance fees."

25. As to the last claimed exemption – the alleged "all taxation" exemption - in *Oakland County v. Federal Housing Finance Agency*, 2012 WL 1658789 (E.D. Mich. May 11, 2012), the Eastern District of Michigan summarily rejected Fannie Mae, Freddie Mac, and the FHFA's argument that this exemption applied. In granting summary judgment for Michigan counties that claimed back-owed transfer taxes for the transfers of property in which Fannie Mae or Freddie Mac was the grantor, the Eastern District of Michigan, citing a century's worth of Supreme Court precedent, concluded: "Because there is a presumption against implied tax exemptions, and 'all taxation' has been implied to mean 'direction taxation,' and the Michigan Transfer Taxes are an excise tax rather than a direct tax, Defendants are unambiguously liable for the Transfer Taxes." *Id.* at *6. In reaching this conclusion, the Eastern District of Michigan also concluded that the Housing Economic Recovery Act of 2008 ("HERA"), which created the FHFA to regulate Fannie Mae and Freddie Mac, had no bearing on Fannie Mae and Freddie Mac's liability for the excise tax.

26. The Eastern District of Michigan also found that the Defendants were not exempt under Michigan law because the Defendants were not "federal instrumentalities" but essentially "privately owned mortgage bankers." *Id.* at *8 (quoting *Nevada v. Countrywide Home Loans*, 812 F.Supp. 2d 1211, 1217 (D.Nev. 2011)).

**C.     The Defendants Illegal Claim of Exemption Has Damaged the Plaintiff and the Class.**

27. Because Fannie Mae and Freddie Mac obtain title through the foreclosure process, Ohio's foreclosure crisis has resulted in Fannie Mae and Freddie Mac succeeding in interest on a large number of deeds in Ohio during the Class Period. Fannie Mae and Freddie Mac, consistent with their practice, have secured purchasers for likely tens of thousands of these properties across the State of Ohio. In Montgomery County alone, Fannie Mae and Freddie Mac served as grantee in over 850 real estate transfers and grantor in over 2,000 real estate transfers. During the Class Period, neither Fannie Mae nor Freddie Mac paid the properly owed County Excise Tax on some or all of these transfers.

28. Ohio has faced – and continues to face – a foreclosure crisis. As the chart below shows, between 2002 and 2008, there were 483,456 new foreclosure case filings in Ohio. Based on Ohio's 2009 population, this equates to roughly one new foreclosure filing for every twenty-four Ohio citizens. Montgomery County, Ohio was only surpassed by three counties in terms of total number of foreclosures during this period.

| County    | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|-----------|------|------|------|------|------|------|------|
| Adams     | 113  | 110  | 130  | 118  | 107  | 116  | 155  |
| Allen     | 678  | 551  | 531  | 591  | 647  | 715  | 996  |
| Ashland   | 149  | 176  | 189  | 238  | 235  | 266  | 282  |
| Ashtabula | 531  | 587  | 610  | 586  | 723  | 741  | 782  |
| Athens    | 110  | 118  | 120  | 128  | 157  | 206  | 169  |
| Auglaize  | 159  | 153  | 150  | 174  | 201  | 217  | 227  |
| Belmont   | 161  | 173  | 143  | 209  | 200  | 202  | 220  |
| Brown     | 213  | 246  | 277  | 300  | 308  | 336  | 371  |

| County | | | | | | | |
|---|---:|---:|---:|---:|---:|---:|---:|
| Butler | 1,654 | 1,853 | 1,952 | 2,032 | 2,580 | 2,766 | 2,987 |
| Carroll | 120 | 137 | 125 | 122 | 130 | 156 | 122 |
| Champaign | 219 | 221 | 183 | 208 | 246 | 281 | 256 |
| Clark | 904 | 942 | 894 | 925 | 1,113 | 1,059 | 1,124 |
| Clermont | 747 | 776 | 796 | 812 | 988 | 1,123 | 1,285 |
| Clinton | 229 | 217 | 241 | 216 | 234 | 297 | 291 |
| Columbiana | 501 | 599 | 599 | 599 | 558 | 651 | 636 |
| Coshocton | 150 | 143 | 166 | 150 | 180 | 192 | 180 |
| Crawford | 215 | 181 | 235 | 255 | 277 | 281 | 337 |
| Cuyahoga | 8,987 | 8,686 | 9,751 | 10,935 | 13,610 | 14,267 | 13,858 |
| Darke | 189 | 203 | 176 | 212 | 259 | 273 | 310 |
| Defiance | 115 | 133 | 123 | 120 | 170 | 172 | 183 |
| Delaware | 290 | 402 | 410 | 481 | 720 | 897 | 909 |
| Erie | 286 | 306 | 263 | 370 | 441 | 519 | 562 |
| Fairfield | 449 | 505 | 621 | 622 | 765 | 910 | 964 |
| Fayette | 116 | 137 | 128 | 167 | 195 | 195 | 216 |
| Franklin | 6,104 | 6,072 | 5,940 | 6,596 | 8,875 | 8,928 | 9,305 |
| Fulton | 129 | 135 | 97 | 141 | 176 | 192 | 216 |
| Gallia | 71 | 79 | 61 | 84 | 82 | 94 | 95 |
| Geauga | 204 | 228 | 219 | 260 | 313 | 379 | 435 |
| Greene | 513 | 549 | 584 | 528 | 670 | 668 | 773 |
| Guernsey | 158 | 208 | 196 | 183 | 167 | 225 | 210 |
| Hamilton | 4,117 | 4,076 | 4,528 | 5,066 | 5,876 | 6,277 | 6,673 |
| Hancock | 185 | 200 | 228 | 309 | 375 | 395 | 436 |
| Hardin | 171 | 152 | 160 | 158 | 218 | 202 | 210 |
| Harrison | 57 | 53 | 56 | 63 | 60 | 72 | 81 |
| Henry | 76 | 79 | 100 | 94 | 109 | 120 | 146 |
| Highland | 242 | 254 | 279 | 286 | 317 | 334 | 351 |
| Hocking | 108 | 131 | 113 | 123 | 142 | 138 | 178 |
| Holmes | 72 | 78 | 108 | 105 | 81 | 125 | 109 |
| Huron | 204 | 248 | 224 | 251 | 333 | 431 | 396 |
| Jackson | 183 | 185 | 148 | 149 | 184 | 205 | 198 |
| Jefferson | 210 | 213 | 259 | 245 | 283 | 255 | 297 |
| Knox | 222 | 235 | 254 | 265 | 298 | 350 | 405 |
| Lake | 788 | 783 | 864 | 918 | 1,141 | 1,382 | 1,517 |
| Lawrence | 169 | 182 | 174 | 223 | 206 | 241 | 260 |
| Licking | 674 | 781 | 798 | 862 | 1,081 | 1,183 | 1,204 |
| Logan | 228 | 224 | 242 | 271 | 313 | 292 | 323 |
| Lorain | 1,442 | 1,465 | 1,510 | 1,656 | 2,237 | 2,376 | 2,442 |
| Lucas | 2,509 | 2,561 | 2,766 | 2,903 | 3,618 | 3,735 | 4,359 |
| Madison | 156 | 158 | 192 | 176 | 213 | 252 | 198 |
| Mahoning | 1,301 | 1,443 | 1,367 | 1,692 | 1,946 | 1,860 | 1,836 |
| Marion | 399 | 414 | 395 | 433 | 495 | 505 | 531 |
| Medina | 451 | 581 | 536 | 607 | 729 | 859 | 961 |
| Meigs | 63 | 62 | 86 | 65 | 83 | 56 | 75 |
| Mercer | 115 | 96 | 86 | 91 | 132 | 147 | 142 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Miami | 402 | 423 | 406 | 427 | 521 | 577 | 590 |
| Monroe | 23 | 27 | 34 | 34 | 45 | 37 | 38 |
| Montgomery | 3,881 | 4,220 | 4,002 | 4,050 | 5,076 | 5,063 | 5,194 |
| Morgan | 32 | 39 | 31 | 36 | 43 | 45 | 37 |
| Morrow | 177 | 233 | 192 | 194 | 230 | 224 | 261 |
| Muskingum | 369 | 371 | 412 | 395 | 501 | 557 | 563 |
| Noble | 22 | 24 | 29 | 25 | 25 | 29 | 38 |
| Ottawa | 145 | 139 | 127 | 145 | 185 | 211 | 273 |
| Paulding | 90 | 107 | 97 | 95 | 121 | 126 | 126 |
| Perry | 159 | 192 | 161 | 195 | 221 | 243 | 217 |
| Pickaway | 169 | 188 | 221 | 219 | 308 | 307 | 318 |
| Pike | 84 | 103 | 107 | 101 | 108 | 106 | 129 |
| Portage | 586 | 550 | 535 | 617 | 725 | 767 | 874 |
| Preble | 256 | 248 | 228 | 234 | 307 | 348 | 374 |
| Putnam | 67 | 84 | 80 | 80 | 86 | 81 | 104 |
| Richland | 579 | 559 | 592 | 580 | 752 | 849 | 862 |
| Ross | 260 | 310 | 366 | 293 | 399 | 413 | 416 |
| Sandusky | 181 | 193 | 218 | 232 | 303 | 341 | 321 |
| Scioto | 288 | 289 | 277 | 312 | 326 | 330 | 304 |
| Seneca | 194 | 221 | 197 | 226 | 263 | 301 | 316 |
| Shelby | 175 | 219 | 208 | 203 | 252 | 254 | 250 |
| Stark | 2,021 | 2,119 | 2,129 | 2,167 | 2,799 | 2,808 | 3,017 |
| Summit | 3,214 | 3,352 | 3,358 | 3,744 | 4,833 | 4,808 | 4,113 |
| Trumbull | 1,196 | 1,092 | 1,117 | 1,197 | 1,560 | 1,526 | 1,481 |
| Tuscarawas | 284 | 252 | 278 | 346 | 401 | 417 | 389 |
| Union | 151 | 189 | 223 | 237 | 266 | 292 | 320 |
| Van Wert | 122 | 120 | 139 | 147 | 149 | 162 | 201 |
| Vinton | 32 | 35 | 40 | 40 | 43 | 52 | 43 |
| Warren | 660 | 723 | 778 | 938 | 1,029 | 1,231 | 1,306 |
| Washington | 161 | 209 | 209 | 190 | 230 | 285 | 173 |
| Wayne | 254 | 272 | 292 | 356 | 426 | 472 | 462 |
| Williams | 111 | 153 | 139 | 144 | 185 | 191 | 199 |
| Wood | 270 | 283 | 369 | 352 | 442 | 553 | 582 |
| Wyandot | 53 | 65 | 67 | 72 | 102 | 108 | 98 |
| Statewide | 55,274 | 57,083 | 59,041 | 63,996 | 79,059 | 83,230 | 85,773 |

29.     Although the aforementioned figures relate to all homes foreclosed on – and not necessarily owned and/or sold by Fannie Mae/Freddie Mac, Fannie Mae and Freddie Mac have succeeded in interest to a large number of these properties during the Class Period. Indeed, a recent federal government office of inspector general report found that Fannie Mae and Freddie Mac owned 7,503 homes in Ohio at the end of 2011; only six other states had more Fannie Mae

and Freddie Mac –owned homes: Michigan, California, Florida, Illinois, Georgia, and Minnesota.

30. Based on the large number of homes still owned by Fannie Mae and Freddie Mac in Ohio, the significant number of foreclosures in Ohio, and Fannie Mae and Freddie Mac's practice of selling homes to new buyers upon gaining title, Fannie Mae and Freddie Mac have received (from mortgagors) and sold (to new purchasers) a significant number of properties in the State of Ohio without paying the properly owed County Excise Tax.

31. This foreclosure crisis corresponded with a significant decline in the amount of revenue generated for the Class by the County Excise Tax. Specifically, County Excise Tax revenue in Ohio declined from a high of $152.7 million in 2006 to a low of $77.7 million in 2007. This is almost a fifty percent decline in just three years. At least some of the decline in County Excise Tax revenue is directly attributable to Fannie Mae and Freddie Mac's wrongful claims of exemption from the County Excise Tax.

32. Consequently, the Defendants have failed to pay the County Excise Tax as required by Ohio law and through this action, the Plaintiff, on behalf of itself and the Class, seeks to be made whole.

## CLASS ALLEGATIONS

33. Plaintiff brings this action on behalf of Montgomery County, Ohio, and pursuant to Federal Rule of Civil Procedure 23, on behalf of a class of persons defined as follows:

> Any Ohio county that recorded a deed or other conveyance from Defendants Fannie Mae or Freddie Mac from 2002 to the present where those Defendants have claimed to be exempt from payment of the County Excise Tax.

34. *Numerosity.* Members of the Class are so numerous that joinder is impracticable. There are eighty-eight counties in Ohio, eighty-seven of which have enacted a County Excise

12

Tax, and Plaintiff alleges on information and belief that the Defendants have failed to pay the appropriate County Excise Tax in each such county. As such, members of the Class are so numerous that individual joinder is impracticable under the circumstances of this case.

35. *Typicality.* Plaintiffs' claims are typical of the claims of other Class members, as they arise out of the same course of conduct and under the same Ohio law and legal theories. Plaintiff is a County Board of Commissioners acting on behalf of Montgomery County and members of the proposed class are also operating on behalf of their respective counties. Consequently, the Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class. Accordingly, by proving Plaintiff's own claim, Plaintiff will prove other class members' claims as well.

36. *Commonality.* Questions of law and fact are common to all members of the Class, and such common issues of law and fact predominate over any questions affecting only individual members of the Class. The common issues of law and fact include, but are not limited to, the following:

> (a) whether the Defendants wrongfully claimed to be exempt from the payment of the County Excise Tax under federal law;
>
> (b) whether the Defendants wrongfully claimed to be exempt from the payment of the County Excise Tax under Ohio law;
>
> (c) whether the Class members have been damaged by the Defendants' conduct, specifically, whether the non-payment of the County Excise Taxes led to the Class members receiving less money than they otherwise should have received absent the Defendants' wrongful claim of exemption;
>
> (d) whether the Defendants were unjustly enriched to the detriment of the Class such that Class members are entitled to restitution;

13

    (e)  whether there a claim of quantum meruit is appropriate; and

    (f)  the appropriate class-wide measure of damages.

  37. ***Adequacy of Representation.*** Plaintiff can and will fairly and adequately represent the interests of the Class and has no interests that are adverse to, conflict with, or are antagonistic to the interests of the Class. Plaintiff understands and appreciates its duties to the Class under Rule 23 of the Federal Rules of Civil Procedure, is determined to diligently discharge those duties, and is committed to vigorously protecting the rights of absent Class members. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action lawsuits and, in particular, such lawsuits on behalf of municipalities. Plaintiff and counsel have the necessary financial resources to adequately and vigorously litigate this class action.

  38. ***Predominance.*** The questions of law and fact common to the members of the Class, as identified above, predominate over any questions affecting only individual members, including legal and factual issues relating to the Defendants' liability and damages. Plaintiff's claims and other Class members' claims arise from the same course of conduct and Plaintiff and other Class members share the same legal rights.

  39. ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of needlessly repetitious litigation. Separate actions by individual Class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of Class members to pursue their claims. There would be enormous efficiencies to the court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis.

Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. This action presents no difficulties in management that would preclude maintenance as a class action under Fed. R. Civ. P. 23(b)(3).

## CAUSES OF ACTION

### COUNT I – NON-PAYMENT OF COUNTY EXCISE TAXES

40. Plaintiff hereby reallages and incorporates each preceding and succeeding paragraph as though fully set forth herein.

41. Defendants Fannie Mae and Freddie Mac have been the grantors and grantees in many real estate transactions in Ohio in which they have recorded documents or transfers with the appropriate Ohio county, such as Plaintiff herein, and have not paid the appropriate County Excise Tax.

42. Defendants Fannie Mae and Freddie Mac have not paid the County Excise Tax because they have claimed on the face of the documents that they have recorded that the transaction is exempt from the County Excise Tax. They sometimes claim the transaction is exempt because they are federal instrumentalities and, under Ohio law, federal instrumentalities are exempt. Other times, they claim that the transfer is made in order to release a security for a debt obligation or because no money or other valuable consideration was paid. Finally, other times they claim that they are exempt pursuant to their federal charters. Evidence of the allegations set forth herein are public record held by the Plaintiff and other Class members, as well as Defendants.

43. None of Defendants' claimed exemptions apply. As set forth above, Defendants

Fannie Mae and Freddie Mac are (a) federally chartered private corporations and not government entities and (b) acting as a guarantor and making the lending institution whole. Further, Fannie Mae and Freddie Mac's claimed federal charter exemption from "all taxation" does not apply to excise taxes, such as the County Excise Tax at issue here. As such, the transfers at issue in this case remain taxable transactions under state and federal law. Defendant FHFA's role as conservator has no bearing on Fannie Mae and Freddie Mac's liability for the County Excise Tax.

44. Defendants Fannie Mae and Freddie Mac have failed to pay the County Excise Tax as required by Ohio law. As a proximate result, Plaintiffs have been damaged. Among other things, Plaintiffs are entitled to the County Excise Tax that should have been paid and interest for failure to pay the County Excise Tax pursuant to Ohio law.

45. The claim by Defendants Fannie Mae and Freddie Mac that they are exempt from the Ohio Excise Tax was negligent, intentional, wanton, and/or intended to defraud the Plaintiffs, and as such, Plaintiffs are entitled to any penalties and interest as prescribed under Ohio law.

46. Defendant FHFA is the Conservator of Defendants Fannie Mae and Freddie Mac. To the extent that Defendant FHFA is responsible for the acts of Defendants Fannie Mae and Freddie Mac, Plaintiffs seek judgment against FHFA.

## COUNT II - UNJUST ENRICHMENT

47. Plaintiff hereby reallages and incorporates each preceding and succeeding paragraph as though fully set forth herein.

48. Based upon Defendants' wrongful conduct, Plaintiff seeks to recover, at law, monies held by Defendants that belong to Plaintiff and the proposed Class in equity and good conscience.

49. Where benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefore, the law requires the party receiving the benefits to pay their reasonable value.

50. The circumstances are such that it is inequitable and unjust for the Defendants to retain the benefit of the privilege of using the Plaintiff and the proposed Class members' recordation systems without paying the County Excise Tax for such use as required by law and Plaintiff seeks compensation, on behalf of itself and the proposed Class, for the benefits unjustly received by the Defendants in addition to interest, attorneys' costs and fees, and exemplary damages as allowed by law and equity.

51. Defendant FHFA is the Conservator of Defendants Fannie Mae and Freddie Mac. To the extent that Defendant FHFA is responsible for the acts of Defendants Fannie Mae and Freddie Mac, Plaintiff seeks judgment against FHFA.

## COUNT III – QUANTUM MERUIT

52. Plaintiff hereby reallages and incorporates each preceding and succeeding paragraph as though fully set forth herein.

53. Plaintiff and the proposed Class members performed valuable services for the Defendants by recording deeds and other instruments filed by the Defendants in the Plaintiffs' land records.

54. Defendants requested that the Plaintiff and the proposed Class members render these valuable services and knowingly accepted the benefits of recording their deeds, including the ability to represent that they had priority on the deeds.

55. Defendants' failure to compensate the Plaintiffs for these valuable services is unjust in that the Defendants enjoyed the valuable services and benefits provided by the

Plaintiff's recordation system without paying the Excise Tax in exchange for such use as required by law.

56. The Plaintiff and the proposed Class members expected compensation at the time they rendered the service to the Defendants but for the Defendants' unlawful claims of exemption from payment of compensation for the service.

57. Plaintiff now seeks repayment of the compensation falsely withheld in addition to interest, attorneys' costs and fees, and exemplary damages as allowed by law and equity on behalf of itself and the proposed Class.

58. Defendant FHFA is the Conservator of Defendants Fannie Mae and Freddie Mac. To the extent that Defendant FHFA is responsible for the acts of Defendants Fannie Mae and Freddie Mac, Plaintiffs seek judgment against FHFA.

## **COUNT IV - DECLARATORY JUDGMENT**

59. Plaintiff hereby reallages and incorporates each preceding and succeeding paragraph as though fully set forth herein.

60. There is an actual controversy between the Plaintiff and the proposed Class on the one hand, and the Defendants on the other, in as much as the Defendants' continue to claim that they are exempt from the payment of County Excise Taxes.

61. It is in the public interest to have the rights of the parties with regards to the payment of the County Excise Tax determined because the declaratory judgment will terminate and afford relief from uncertainty, insecurity and controversy giving rise to this proceeding.

62. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks to obtain a non-pecuniary benefit for the Plaintiff and the proposed Class in the form of a declaratory judgment that the Defendants are not exempt from payment of transfer/excise taxes under state and/or federal law. Counsel for the

Plaintiff are entitled to recover their reasonable attorneys' fees and expenses as a result of the conferral of a non-pecuniary benefit on behalf of the proposed Class, and it will seek an award of such fees and expenses at the appropriate time.

63. Plaintiff and the proposed Class are also entitled to further relief under 28 U.S.C. § 2202, including payment to them of the County Excise Taxes not paid by Defendants, together with any statutory penalties and interest. Such relief is necessary and proper to the declaratory relief sought.

64. All conditions precedent to this cause of action have occurred, have been satisfied, or have been waived.

65. Defendant FHFA is the Conservator of Defendants Fannie Mae and Freddie Mac. To the extent that Defendant FHFA is responsible for the acts of Defendants Fannie Mae and Freddie Mac, Plaintiffs seek judgment against FHFA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief on behalf of itself and the proposed Class:

A. That the Court certify the matter as a class action pursuant to the provisions of subsection (b)(2) and/or (b)(3) of Fed. R. Civ. P. 23 and order that notice be provided to all class members;

B. That the Court enter judgment declaring that the practices complained of herein are in violation of law and that Defendants are subject to payment of the County Excise Taxes and are not governmental entities exempt therefrom;

      C.      That the Court enter judgment enjoining the Defendants from engaging in the practice complained of herein, to wit, claiming exemption from the County Excise Taxes as governmental entities;

      D.      That the Court enter judgment awarding the Plaintiff and the proposed Class damages equal to the transfer taxes not paid, plus a penalty of ten percent (10%) of the amount of the fees and transfer tax not paid;

      E.      That the Court enter judgment awarding the Plaintiff and the proposed Class prejudgment interest and reasonable attorney's fees and costs; and

      F.      That the Court order such further relief as is equitable and just.

## JURY TRIAL DEMAND

Plaintiff hereby requests, on behalf of itself and the proposed Class, that a jury decide all factual issues in this case.

Dated this 25th Day of July, 2012.

Respectfully Submitted,

| */s/ Mathias H. Heck, Jr.* | */s/ William P. Butterfield* |
|---|---|
| Mathias H. Heck, Jr. (0014171) | William P. Butterfield (0020049) |
| Prosecuting Attorney | James J. Pizzirusso (*pro hac vice* pending) |
| Montgomery County Prosecutor's Office | Nathaniel C. Giddings (*pro hac vice* pending) |
| 301 West Third Street | **HAUSFELD LLP** |
| Dayton, Ohio 45402 | 1700 K Street, NW Suite 650 |
| | Washington, D.C. 20006 |
| John Cumming (0018710) | Telephone: (202) 540-7200 |
| Civil Division Chief | Facsimile: (202) 540-7201 |
| Montgomery County Prosecutor's Office | Email: wbutterfield@hausfeldllp.com |
| 301 West Third Street | Email: jpizzirusso@hausfeldllp.com |
| Dayton, Ohio 45402 | Email: ngiddings@hausfeldllp.com |

*Attorneys for Plaintiff and the Proposed Class*