UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Board of Commissioners of Montgomery County, Ohio, on behalf of Montgomery County, Ohio and Board of Commissioners of Seneca County, Ohio on behalf of Seneca County, Ohio, with all on behalf of themselves and all others similarly situated,**

    **Plaintiffs,**

v.

**Federal Housing Finance Agency, et al.,**

    **Defendants.**

Case No. 3:12-CV-216

Judge Thomas M. Rose

_____

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT (Doc. 24) AND TERMINATING CASE.**
_____

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint. Doc. 24.  The complaint Defendants would have the Court dismiss charges them with non-payment of Ohio Transfer Taxes.  Defendants assert that they are statutorily exempt from payment of the taxes.  Plaintiffs request that the Court order payment of unpaid transfer taxes and penalties and interest and seek a declaration that Defendants may not claim to be exempt in the future.

**Factual Background**

Ohio Revised Code § 319.54(G)(3) requires the auditor in each Ohio county to collect ten cents for each one hundred dollars of value of real property transferred.  Additionally, Ohio Revised Code § 322.02 permits each Ohio county to enact a "real property transfer tax on each

1

deed conveying real property or any interest in real property located wholly or partially within the boundaries of the county" in order to "pay[] the costs of enforcing and administering the tax and provid[e] additional general revenue for the county".  This County Transfer Tax is capped, by state law, at thirty cents for each one hundred dollars of value of real property transferred.

Defendants claim to be immune from these taxes by virtue of federal statutes.  Defendant Federal Home Loan Mortgage Corporation claims exemption under a provision that reads:

> Exemption from Federal, State, and local taxation; exception; applicability of other provisions The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by any territory, dependency, or possession of the United States or by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

12 U.S.C. § 1452(e).

Similarly, Defendant Federal National Mortgage Association claims immunity under the federal code:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).

Finally, Defendant Federal Housing Finance Agency also claims statutory immunity under a provision reading:

> Taxation The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing

> authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed.

12 U.S.C. § 4617(j)(2).

According to the Consolidated Amended Class Action Complaint, Congress chartered the Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and "to promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716.  Fannie Mae was initially a federal entity, but became a private, publicly-traded corporation in 1968.  Freddie Mac has been a private, publicly-traded corporation since its creation by Congress in the 1970s. The Federal Housing Finance Agency was created on July 30, 2008, by the Housing and Economic Recovery Act of 2008. This act gave the Federal Housing Finance Agency the authority to oversee Fannie Mae, Freddie Mac, and the Federal Home Loan Banks. See 12 U.S.C. §§ 4501, *et seq.*  On September 6, 2008, the Federal Housing Finance Agency "succeed[ed] to . . . all rights, titles, powers, and privileges" of Fannie Mae and Freddie Mac. 12 U.S.C. §§ 4617(b)(2).

When a mortgagor becomes delinquent and enters into foreclosure, Fannie Mae or Freddie Mac can become the owner of the property secured by the mortgage in one of two ways. First, Fannie Mae and Freddie Mac act as guarantor on a significant number of mortgages nationwide; when a Fannie Mae or Freddie Mac guaranteed mortgage is foreclosed on by the mortgagor, Fannie Mae or Freddie Mac purchase the property from the mortgagor.  This transfer is recorded in the appropriate county land office.  Second, Fannie Mae and Freddie Mac also

own a significant percentage of single-family mortgages nationwide. Upon finding a buyer, Fannie Mae or Freddie Mac, whichever took ownership, conveys the property and records the deed in the appropriate county land office.

Plaintiffs assert that Defendants have failed to pay the Ohio Transfer Taxes as required by Ohio Revised Code §§ 319.54(G)(3) and 322.01. Plaintiffs seek back taxes, declaratory judgment that Defendants are not exempt from paying the transfer taxes and costs and fees. Defendants assert that they are exempt from these taxes by federal statute and have moved the Court to dismiss the Consolidated Amended Complaint. Plaintiffs assert that the statutes do not exempt Defendants from the transfer taxes and that, if they do, they are unconstitutional.

**Jurisdiction**

As Plaintiff asserts, this Court has jurisdiction over this action under 12 U.S.C. § [1]1452(f)(2) ("[A]ll civil actions to which the [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value"); see also *Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin. Agency*, No. Civ.A.04–4770, 2005 WL 44524, at *6 (E.D. Pa. Jan.10, 2005)("[T]he statutory language in § 1452(f) confers federal jurisdiction over an entire action to which Freddie Mac is a party. A common reading of the language 'all civil actions to which [Freddie Mac] is a party' suggests that jurisdiction extends to the entire suit."). Given this basis for jurisdiction, the Court need not consider Plaintiff's assertion that "a class action to recover real estate transfer taxes on the recording of instruments under Ohio law" creates jurisdiction under "28 U.S.C. § 1331, as this case requires interpretation of federal law in order to adjudicate Plaintiffs' state law claims" (doc. 13 at ¶ 2, 4), or the more straightforward

---

[1] In determining whether a complaint arises under federal law courts apply the "well-pleaded complaint" rule. *Loftis v. United Parcel Serv., Inc*., 342 F.3d 509, 514 (6th Cir.2003). Under this rule "we examine the 'well pleaded' allegations of the complaint and ignore potential defenses." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003).

4

claim of jurisdiction pursuant to 28 U.S.C. § 1332 based upon complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeding $5,000,000, exclusive of interests and costs.

**Legal Standard**

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5 (1975), it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. *Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

The Court is mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also McLain v. Real Estate Bd.*, 444 U.S. 232, 246 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). The focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School District of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978). Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint must afford the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Dunn v. State of Tennessee*, 697 F.2d 121, 125 (6th Cir. 1982); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Thus, this Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type alleged, if the facts alleged are insufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir. 1978); *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

## I.     Legal Analysis

The parties' dispute centers on an interpretation of statutes Congress enacted creating tax exemptions for Defendants. "It is well settled that 'the starting point for interpreting a statute is the language of the statute itself.' " *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "[W]hen the statutory language is plain, [the court] must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Departure from the plain language of a statute is disfavored and "appropriate only in rare cases in which the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafter or when the statutory language is ambiguous." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 246 (6th Cir. 2004) (quotations and alterations omitted). Courts should "'resist reading words or elements into a statute that do not appear on its face.'" *Id.* (quoting *Bates v. United*

6

*States*, 522 U.S. 23, 29 (1997)). "It is not the Court's role to address perceived inadequacies in a statute." *Id.* (quotations and citations omitted).

The instant case is largely governed by the recent Sixth Circuit decision concerning the real property transfer tax in Michigan:

> The statutes at issue here plainly state that defendants are exempt from "all taxation" imposed by the state or local taxing authority. See 12 U.S.C. § 1723a(c)(2) (Fannie Mae's charter); § 1452(e) (Freddie Mac's charter); § 4617(j)(2) (Agency exemption). The statutes do not define "all" or "taxation." Where terms are undefined, "[t]he everyday understanding should count for a lot," and we look to "regular usage to see what Congress probably meant." *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006). "Taxation" is the "imposition or levying of taxes;" "the action of taxing or the fact of being taxed." Oxford English Dictionary 679, vol. XVII (2d ed. 1989). As employed in the exemption statutes, "all" is an adjective describing "[t]he entire or unabated amount or quantity of; the whole extent, substance, or compass of; the whole." Oxford English Dictionary 324, vol. I (2d ed. 1989).
>
> Accordingly, the common sense, non-technical interpretation of "all taxation" has to include the State and County real estate transfer taxes here, which impose a tax on the "seller or grantor" when a deed or other instrument of conveyance is recorded during the transfer of real property. MICH. COMP. LAWS § 207.502; § 207.523. In other words, a straightforward reading of the statute leads to the unremarkable conclusion that when Congress said "all taxation," it meant all taxation. *Lopez*, 549 U.S. at 53; see also, *Sander v. Alexander Richardson Inv.*, 334 F.3d 712, 716 (8th Cir. 2003) ("In short, 'all' means all.").
>
> The statutes' text is revealing in another way. In granting each of the defendants' an exemption, Congress explicitly created a carve-out from the "all taxation" language by permitting taxes on real property. But Congress did not provide a similar carve out for the type of transfer taxes at issue here. "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference...is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). Accordingly, because the statutes are clear, we are not in a position to second-guess Congress and create a new exception in the statute for state and county real estate transfer taxes.

7

*County of Oakland v. Federal Housing Finance Agency*, 716 F.3d 935, 940 (6th Cir. 2013).

While the answer to this question has already been determined by the Sixth Circuit, the Court must still deal with Plaintiffs' claim that Congress exceeded its Constitutional authority in passing the legislation. Plaintiffs attempt to convince the Court of their position by recasting the analysis, focusing not on Congress's Constitutional authority, but focusing upon their own prerogatives, requesting that the Court recognize previously unknown levels of scrutiny. Plaintiffs would have the Court create a strict scrutiny of legislation that limits a state's ability to levy taxes and perceives the Congressional action as aimed at a state's property transfer tax, which it describes as detached from interstate commerce.

The Congressional legislation under review, however, is not aimed at state property transfer taxes, but at facilitating the secondary mortgage market. Thus Court's review is thus a traditional one.

Supreme Court precedent establishes outer limits on Congress's Commerce Clause power along two dimensions. First, Congress must legislate on a subject with a substantial nexus to interstate commerce. See, e.g., *United States v. Lopez*, 514 U.S. 549, 559 (1995); *United States v. Morrison*, 529 U.S. 598, 608-09 (2000). This requires that the legislation address "'commerce' or [some] sort of economic enterprise . . . ." *Lopez*, 514 U.S. at 561; see also *Morrison*, 529 U.S. at 610 (emphasizing "the role that the economic nature of the regulated activity plays in our Commerce Clause analysis"). Second, once it is established that legislation addresses a proper commercial subject, "the only remaining question for judicial inquiry is whether the means chosen by Congress [are] reasonably adapted to [its] end." *Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.*, 452 U.S. 264, 276 (1981) (internal quotation marks, brackets, and citations omitted). "The judicial task is at an end once the court determines that Congress acted

rationally." *Id.* Furthermore, although not limited to Commerce Clause legislation, the "clear and manifest purpose" standard provides another "outer limit" on Congress's ability to supersede state tax laws—Congress must clearly state its intent to do so. Congress generally does not intend federal statutes to preempt state tax powers or other powers central to state sovereignty, but when a statute conveys Congress's "clear and manifest intent" to preempt key state sovereign powers such as taxation, that statute will trump the state's taxing power. See *Dep't of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332 (1994).

Here, the subject on which Congress legislated is the secondary mortgage market, which has a substantial nexus with interstate commerce. Exempting Defendants from state and local taxation is reasonably adapted to the end Congress sought to achieve—more equitable and efficient allocation of mortgage credit throughout the nation. See 12 U.S.C. § 1716. Reducing the costs faced by the primary market participants, and ensuring that they are not subject to substantial variation in tax costs across states, are facially rational means of achieving that legislative end.

As the statutes exempt Defendants from paying the property transfer taxes and are Constitutional, the Court need not consider whether Defendants are exempt from state taxation as instrumentalities of the federal government. For the same reasons the Court will grant Defendants' Motion.

**Conclusion**

Because Defendants are statutorily exempt from paying state and county property transfer taxes and these statutory exemptions are constitutional, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 24). The Clerk is ordered to **TERMINATE** the instant case from the docket

records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

    **DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, October 23, 2013.

                                                  s/Thomas M. Rose_____
                                                  United States District Judge